IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ohio and Vicinity Regional Council of        Case No. 3:05CV7161
    Carpenters, United Brotherhood of
    Carpenters and Joiners of America,

        Plaintiffs,

    v.                                      ORDER

Greg Construction Company,

        Defendant.

    This is a dispute between labor unions and an employer. Plaintiffs Ohio and Vicinity Regional Council of Carpenters and United Brotherhood of Carpenters and Joiners of America (the Unions, collectively) seek to enforce an arbitration award against Defendant Greg Construction Company (Greg). The Unions claim that Greg was bound by a collective bargaining agreement (CBA); Greg contends that it was not bound by a collective bargaining agreement.

    Jurisdiction exists under 28 U.S.C. § 1331 and 29 U.S.C. § 185.

    Pending are counter-motions for summary judgment. For the following reasons, both motions will be denied.

## Background

    The Unions are labor organizations formed under the National Labor Relations Act. They represent carpenters in Northwest Ohio.

Greg is a construction company with offices in Michigan and Florida. It employs both union and non-union tradesmen on projects throughout the United States, including in Northwest Ohio. While Greg has signed long-term collective bargaining agreements with local labor representatives in Michigan and the New York City metropolitan area, it has signed no such agreement with the Unions.

In 1997 Greg began working on a contract in Northwest Ohio for the K-Mart Corporation. In connection with that project, it signed an "Employer Participation Agreement" with the Unions' predecessor-in-interest. Under that document, Greg agreed to abide by the terms of the area-wide CBA until July 31, 1997, when the Employer Participation Agreement expired by its own terms.

The CBA to which the Participation Agreement bound Greg contained two key clauses at issue in this litigation. First, it included a grievance provision which required both parties to submit their disputes to mandatory binding arbitration.

Second, the CBA contained an "evergreen provision." Under this clause, the CBA automatically renewed itself with successive iterations unless either party repudiated the CBA at one of its expirations. *Elec. Workers Local 58 Pension Trust Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 653 (6th Cir. 2000). Accordingly, a party which entered into the CBA would become bound to the terms and conditions of later iterations unless it repudiated the agreement in a timely manner. *Trs. of the B.A.C. Local 32 Insur. Fund v. Fantin Enter., Inc*., 163 F.3d 965, 968-69 (6th Cir. 1998) ("When a contract is renewed via the operation of an evergreen clause, all of the attendant contractual obligations naturally continue for the period of renewal.")

As required by the Participation Agreement, Greg complied with the provisions of the CBA during its work on the K-Mart project. The July, 1997, expiration date of the Participation

2

Agreement came and went without notice from Greg to the Unions that it was repudiating the CBA and thereby avoiding any obligation to continue to abide by the terms and conditions of the CBA.

Greg, though no longer bound to the terms of the CBA by express agreement, contacted the unions again in August, 1997, to request carpenters for another project in Northwest Ohio. It paid those craftsmen the wage rates prescribed by the CBA, made fringe benefit contributions to the appropriate union funds, and filed reporting forms mandated by the CBA.

After August, 1997 [and thus the expiration of the initial Participation Agreement], Greg regularly used the Unions' hiring hall for about six years to hire carpenters for its projects in Northwest Ohio. It paid employees obtained through the hiring hall in accordance with the CBA and complied with the CBA's provisions regarding benefits and reporting.

Had these been the only carpenters used by Greg on its Northwest Ohio projects during this period, no dispute would have arisen. But Greg concurrently employed non-union carpenters. The company neither paid union wages to nor made benefit contributions on behalf of these employees. Likewise, it did not file reports as to those employees as mandated by the Agreement

This conduct on Greg's part violated the CBA.[1]

---

[1]

It is unclear whether Greg used union and non-union carpenters at the same job site, and whether the Unions would have known, or would have had reason to know about the use of non-union labor.

In its motion for summary judgment, Greg states "Carpenters who worked on these same projects on behalf of Greg, but were not members of Local 248, were not paid in accordance with the terms of the contract . . . ." That statement could suggest Greg used union and non-union labor at the same site. In support of that assertion, Greg relies on the affidavit of Sean Pfent. However, nothing in that document implies such a conclusion.

Further, Greg notes in its response that it regularly employed workers who were not represented by the Unions alongside the Unions' carpenters. This again suggests Greg used the union carpenters and non-union carpenters at the same site. However, review of Greg's records indicates those other carpenters Greg references were actually members of other unions and, at least with respect to the

In 2004 the Unions came to believe Greg was using non-union labor at a job site in Findlay, Ohio. Pursuant to the CBA in effect at the time, they filed a grievance.

Greg received notice of the grievance and the ensuing arbitration proceedings. Apparently believing it was not a party to the CBA, Greg did not attend the arbitration hearing. In its absence, the arbitration panel awarded the Unions wages and fringe benefits in the amount of $118,204.80. The Unions now seek to enforce that award.

## Discussion

At issue here is whether Greg is subject to the CBA's mandatory arbitration procedures. The answer to this question depends on whether Greg remained bound to successive CBAs when it did not provide timely notice of repudiation as prior agreements expired.

"[T]he question of whether the parties agreed to arbitrate a certain matter is to be decided by the court, not the arbitrator." *Cleveland Elec. Illuminating Co. v. Utility Workers Union of America*, 440 F.3d 809, 812 (6th Cir. 2006) (citing *AT&T Techs. Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)).[2] If it is, the Unions are entitled to confirmation of the award. *See generally United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-38 (1987) (citations omitted)

---

available records, at no time did Greg use non-union carpenters alongside the Unions' members.

[2] The issue here is whether Greg agreed to submit its disputes to arbitration at all. This is distinct from situations where parties have an arbitration agreement in place and dispute whether a particular issue falls within the arbitrator's jurisdiction provided for in the contract. Under those circumstances, some arbitration agreements provide that the question is for the arbitrator, not the courts. *Memphis Publishing Co. v. Newspaper Guild of Memphis*, 2006 WL 367892, *2-3 (W.D.Tenn.); *see also Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 73 (2d Cir.1997).

Here, however, Greg disputes the existence of any binding agreement at all. Under that set of circumstances, a court must apply ordinary state-law contract formation principles to resolve the issue. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

("courts play only a limited role when asked to review the decision of an arbitrator [and are] not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.").

There is no signed agreement binding Greg to abide by the CBA's terms. The only agreement between the parties expired by its own terms in July, 1997.

It is, however, "well established that a collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound; rather, all that is required is conduct manifesting an intent to abide and be bound by the terms of the agreement." *Salisbury v. Kroyer Heating & Air Conditioning, Inc.*, 844 F.2d 789, *3 (6th Cir. 1988) (Table) (citations omitted); *See also Mich. Bricklayers and Allied Craftsmen Health Care Fund v. Northwestern Constr., Inc.*, 116 F.3d 1480, *2 (6th Cir. 1997) (Table); *Trs. of the Flint Mich. Laborers' Pension Fund v. In-Puls Constr. Co.*, 835 F. Supp. 972, 973 (E.D. Mich. 1993); *Advance Case Stone Co. v. Bridge, Structural and Reinforcing Iron Workers, Local Union No.1*, 376 F.3d 734, 737 n.2 (7th Cir. 2004).

Thus, certain actions can bind a party as a form of implied acceptance, even where a signed document has expired. *Id.*

Examples of conduct relevant under this "implied acceptance" theory include: 1) sending CBA required payroll reports; 2) paying union fringe benefit contributions on behalf of employees; 3) requesting employees from the union under CBA procedures; 4) forwarding union dues withheld from paychecks; 5) cooperation with CBA mandated audits; and 6) paying union scale wages. *Salisbury*, 844 F.2d 789, *2; *Mich. Bricklayers*, 116 F.3d 1480, *2-3; *Brown v. C. Volante Corp.*, 194 F.3d 351, 354-55 (2d Cir. 1999).[3]

---

[3] Greg contends the conduct at issue must be "unequivocal." In support, however, the company relies

Here, the parties do not dispute that Greg paid CBA wages, contributed to the Unions' benefit funds, filed CBA mandated payroll reports, and requested employees from the Unions under CBA prescribed guidelines on a number of projects in Northwest Ohio between 1997 and 2003. Under controlling law, that conduct suggests implied acceptance, and an intention to be bound.

Greg, however, also employed non-union carpenters during that period, behavior clearly inconsistent with the terms of the CBA. The Unions claim they were unaware of these actions, and, accordingly, that these actions are irrelevant to the implied acceptance inquiry.

Though it does not appear any court has yet addressed this particular question, the better rule is that the only relevant conduct is that known to the party seeking to enforce the contract [here, the Unions], or that of which the party, in the exercise of diligence, should have known.

This constructive knowledge standard has three advantages.

First, it disincentivizes undesirable behavior on the part of the party [here, the defendant] claiming not to be bound by the putative contract. Under this rule, that party may not rely on its own conduct that a plaintiff had no reason to know of to undermine its implied acceptance of the contract. To mix metaphors, this rule prevents the defendant from leading the plaintiff down a primrose path while crossing its fingers behind its back.

Second, this rule disincentivizes undesirable behavior on the plaintiff's part. Under this standard, a party may not deliberately blind itself to conduct indicating that another party did not consider itself bound and later assert contractual rights that it should have known did not arise.

---

on a case concerning an agency relationship, not contract formation. *See Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865 (7th Cir. 1988). The issue, rather, is the simple fact question of whether Greg "behaved as one who was bound by the collective bargaining agreement."*Salisbury*, at *2.

Finally, a constructive knowledge standard is an "information forcing mechanism" that potentially helps avoid future litigation. This rule encourages defendants to make their intentions clear. Under this standard, defendants have the power and the responsibility to avoid any ambiguity, and thus the attendant litigation that uncertainty can create. This burden appropriately falls on that party because the it has unique control over the relevant information: namely, its own intentions regarding the contract.

Here, Greg used nonunion carpenters, which suggests it did not intend to be bound by the collective bargaining agreement. However, from the presently available record, there remains a genuine issue of material fact whether the Unions knew or should of known of that behavior. Accordingly, summary judgment is inappropriate for either party.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT the counter-motions for summary judgment be, and the same hereby are denied.

So Ordered.

s/James G. Carr
James G. Carr
Chief Judge